## CALUGEROVICH v. YUZZOLINO.

### (Supreme Court, Appellate Term.   June 5, 1908.)

1. LICENSES—EMPLOYMENT AGENCIES.

   An employment agency licensed as required by Laws 1904, p. 1053, c. 432, and amendatory acts, has the right to employ others not licensed on terms agreed on.

2. MASTER AND SERVANT—EMPLOYMENT—EVIDENCE—SUFFICIENCY.

   In an action for services in procuring for defendant, a licensed employment agency, a specified number of laborers at an agreed price per man, evidence *held* insufficient to establish plaintiff's claim.

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by Eugene P. Calugerovich against Nicolo Yuzzolino. From a judgment in the Municipal Court in favor of plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and DAYTON and GERARD, JJ.

Ullo, Ruebsamen & Yuzzolino (Albert M. Yuzzolino, of counsel), for appellant.

Warren S. Burt, for respondent.

PER CURIAM. Appeal from a judgment in favor of plaintiff for $234.67. The pleadings are verified. The complaint alleged work, labor, and services at defendant's request in procuring 150 laboring men at the agreed price of $1.50 per man, aggregating $225, of which $15 has been paid. The answer was a general denial, and for a further defense alleged that plaintiff's services consisted in procuring help or employment for laborers in the city of New York; that under chapter 432, p. 1053, Laws of 1904, and amendatory acts thereof, such services should not be conducted without a license; that plaintiff had no such license, and therefore the agreement sued on was void. At the trial, concession was made that at the time plaintiff rendered the services sued for he had no license as an employment agency. Defendant conducted a licensed employment agency, and, as testified by plaintiff, said to plaintiff: "Bring me men. I give you one dollar and a half for every man"—and that he brought 150, but received only $15. On cross-examination he denied that he had procured laborers for other people during the period between June and August, 1907, but stated that he was then working for defendant without salary, who said to him:

"You seem to be a man with knowledge of many languages, and I will give you an office and telephone, and you work only for me and bring me the men, and I will give you one dollar and a half commission (per man) every time the laborers start away. He told me afterwards that after they (the men) work one week they will pay me, but I made no arrangements to receive my pay from any one but the defendant. At defendant's request I took some men to their place of work, but as soon as he took the men to the station he put them on his book and I was to receive $1.50 (per man), but if a man did not go to work I was not to receive anything. I brought about all the 150 men to the station."

Defendant's clerk retestified that plaintiff called at defendant's office and said to defendant's manager:

"I want to offer laborers to Mr. Yuzzolino to send them to work for $2 per man."

The manager replied:

"I cannot let you have $2 per man. The laborers have to pay $1 after the first pay and 50 cents after their second pay."

Defendant testified that during June, July, and August, 1907, he—

"kept commissaries and shanties in the country and sent laborers to work. About July 23d I saw plaintiff for the first time in presence of Muttarelli, who said: 'This is Mr. Calugerovich. He has any number of laborers he can supply with the job. We have an understanding with him on that, subject to your approval. The laborers are to pay $1 on pay day, which you [defendant] are to collect for plaintiff, and if they work until the following pay day you [defendant] are to allow him 50 cents out of your own pocket.' Plaintiff replied: 'That is all right. That is the understanding.' I said: 'Yes; I am satisfied.' Plaintiff furnished only about 30 men who went to work. He brought others who would not go to work. Plaintiff said he had supplied men for others and got $4 commission. All I collected from the men furnished by plaintiff was $12. He got more than was coming to him. He asked me for a loan. I did not pay or agree to pay him any salary. Others were also supplying me with men."

On cross-examination he said:

"I never had more than 45 men at Stockton, N. J., where I kept a store and where these men were sent. My license was revoked on complaint of men not finding work as represented by plaintiff. Plaintiff would have to look to me for the $1 and the 50 cents. I collected $12, as appears from my book, from the contractor, who charged it to the men."

Muttarelli testified:

"About the end of July, 1907, plaintiff came to defendant's office. I ordered from him ten men. I asked him: 'How is it you are able to furnish such a large amount at once?' He said: 'That is my business, and I furnish them all over.' He asked $2 for each man, but it was agreed that the laborers who worked 15 days would pay $1, and if they stayed another 15 days an additional 50 cents. Plaintiff went with me with 23 men, and took 7 to Trenton himself. In July he told me he had sent 40 men to Schenectady, and showed me the $160 he had received for them, but not from the defendant, who had no place in Schenectady. In July approximately only 50 Italians were employed, and those by me. Plaintiff sent about 55 Greeks to defendant."

Manzorannis, a laborer for defendant, testified:

"Plaintiff told me and two others his office was 73 Mulberry street. He took me there and asked me for $1. I said: 'I will pay you from my wages.' He says: 'All right.' I went with the two others to the station, and found eleven others. Plaintiff showed me Exhibit A, on which he wrote and filled in. We worked five weeks at Stockton. Plaintiff sent 23 men. I never went to defendant's office."

Callucci, who had charge of defendant's commissary at Stockton, testified that he received a consignment of 23 men during July and August, 1907. Nine of the men worked only two or three days. The 14 worked three or four weeks.

Exhibit A is entitled "Yuzzolino's Licensed Labor Agency," is printed both in English and Greek, with blanks for name of employ-

er and employé, addresses of both, náture of work, hours of labor,. wages offered, destination of employé, terms of transportation, and: remarks. This is the paper which plaintiff gave to Manzorannis, and part of which plaintiff denied filling in. An inspection shows at a glance that all the writing was by one person. Hence the conclusion that plaintiff alone filled it in. The evidence indicates that the plaintiff was engaged in obtaining employment for laborers, but, having no license, operated for those who had. It is probable that defendant knew that plaintiff was not licensed, but may he with that knowledge plead a void agreement? particularly as the defendant claims that he was to collect from the men, and not until then pay the plaintiff, which, according to his testimony, he has done. Again, an employment agency has the right to employ others on terms agreed on.

The question to be disposed of is whether plaintiff has sustained the burden of proof. He was flatly contradicted on material points of his testimony by more than one witness, and was not called in rebuttal. He was not corroborated by any circumstances. His denials as to Exhibit A discredited him. If payment had been pleaded, the court would have been justified in so finding.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.